The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
2. At relevant times herein, there existed between plaintiff and defendant-employer the relationship of employee-employer.
3. At all relevant times herein, defendant-employer was an approved self-insured with Alexis acting as its administrator.
4. Plaintiff's average weekly wage at the time of the alleged incident will be determined from a Form 22.
5. The date of the alleged injury by accident is January 3, 1997.
6. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff suffered a compensable injury by accident to his low back on January 3, 1997?
 b) If so, what benefits, if any, is plaintiff entitled to receive?
 c) Whether plaintiff or defendant-employer is entitled to payment of his attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 d) Whether plaintiff's claim is barred under N.C. Gen. Stat. § 97-22 for failure to properly give notice of his alleged workers' compensation injury?
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was thirty-eight years of age at the time of the hearing before the deputy. Defendant employed plaintiff at the time of the alleged injury as a Licensed Practical Nurse where he had been so employed since April 1989.
2. Plaintiff's job duties varied with the patient needs. His duties included medication administration, assisting with the daily hygiene of assigned patients, wound care, assisting patients with tasks such as ambulation and out of bed activities. Plaintiff was also required to turn, dress, and change total care patients.
3. Plaintiff began work on January 3, 1997, at approximately 6:30 a.m. He was assigned five patients on the seventh floor as his shift began. His job required assisting patients who required help with using the bathroom, feeding, and cleaning. Two of the patients assigned were total care patients, who required complete care, one of who weighed over 300 pounds and the other who was difficult to assist. Plaintiff's lifting and pulling of the patients was strenuous.
4. Plaintiff normally worked a twelve-hour shift. He worked until approximately 8:00 p.m. on January 3, 1997.
5. Plaintiff does not recall any specific incident happening on January 3, 1997. He does recall that when he left work and as he was going to his car that his back felt uncomfortable and it remained uncomfortable until he got home.
6. Due to the pain plaintiff was experiencing in his back, plaintiff took some pain medication and had his wife apply an analgesic balm to his back. Plaintiff also slept on the floor or on a mattress on the floor from Friday night through Sunday night.
7. Plaintiff did not do very much during the weekend following January 3, 1997. He and his family had planned a trip, which they cancelled due to plaintiff's back pain.
8. On Monday morning, January 6, 1997, when plaintiff began to bend over in order to pick up the telephone, he felt an increase in pain in his lower back, which caused him to be unable to move. Plaintiff was taken to the emergency room at Cape Fear Valley Medical Center where plaintiff was taken out of work for three days.
9. Thereafter, plaintiff was seen and treated by Dr. Christopher T. Aul who initially diagnosed plaintiff's condition as persistent low back pain with radicular symptoms of unclear etiology. When plaintiff did not respond to conservative treatment consisting of medication and therapy, an MRI was necessitated. Based on this test, Dr. Aul diagnosed plaintiff's condition as a herniated lumbar disc on the left.
10. Dr. Aul referred plaintiff to Dr. Bruce P. Jaufmann after plaintiff failed to respond to his course of treatment. Dr. Jaufmann agreed with Dr. Aul that plaintiff suffered from a large disc herniation. Dr. Jaufmann also agreed with Dr. Aul's course of treatment and did not feel that plaintiff's condition should be treated with surgery.
11. Both Dr. Aul and Dr. Jaufmann were of the opinion that plaintiff's condition was a result of an injury he had sustained at work on January 3, 1997. Dr. Jaufmann noted that plaintiff was in a great deal of pain when he came home and lay on the floor on the night of January 3, 1997 and slept there for the whole weekend. Dr. Jaufmann stated that if plaintiff was experiencing only mild back pain, plaintiff would have been up and engaged in various activities. Plaintiff's lack of activity was an indication to Dr. Jaufmann that plaintiff was in a great deal of pain. This history was consistent with plaintiff injuring his back at work on January 3, 1997. Dr. Jaufmann further stated that it is normal for an injury such as plaintiff's not to manifest itself immediately.
12. Prior to this incident, plaintiff had been involved in two automobile accidents in which he had sustained injuries to his back. However, plaintiff had been pain-free for at least two years prior to incident of January 3, 1997.
13. Plaintiff was out of work due to his injury of January 3, 1997 from January 7, 1997 through April 8, 1997. Plaintiff was released to return to work on March 23, 1997, but defendant-employer did not have a position within his restrictions until April 8, 1997. Plaintiff was taken out of work for this period of time by his treating physicians.
14. Plaintiff notified his supervisor of his injury on January 10, 1997. His supervisor, Johnna Sengdara, admitted that she was informed by plaintiff on or about January 10, 1997, that he had injured his back at work. Defendant denied plaintiff's claim on January 23, 1997, by Form 61, within twenty days of the date of the injury.
15. Dr. Jaufmann noted plaintiff with a ten percent (10%) permanent partial disability rating to his back.
16. Plaintiff's average weekly wage at the time of his injury was $549.83 yielding a weekly compensation rate of $366.55.
***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on January 3, 1997, while in the course and scope of his employment with defendant-employer, for which he is entitled to receive temporary total disability compensation benefits for the period from January 7, 1997 through April 7, 1997 at the weekly compensation rate of $366.55 based on an average weekly wage of $549.83. N.C. Gen. Stat. § 97-2(6) and § 97-2(5).
2. As a result of his January 3, 1997 injury by accident, plaintiff is entitled to related medical treatment reasonably necessary to effect a cure, provide relief or lessen the period of disability, subject to the provisions of N.C. Gen. Stat. §97-25.1.
3. The parties were justified in bringing and defending this action, therefore neither is entitled to an award of attorney's fees. N.C. Gen. Stat. § 97-88.1.
4. As a result of his injury by accident, plaintiff has sustained a ten percent (10%) permanent partial impairment to his back for which he is entitled to receive compensation. N.C. Gen. Stat. § 97-31.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendant shall pay plaintiff temporary total disability benefits at the rate of $366.55 per week from January 7, 1997 through April 7, 1997. All accrued compensation shall be paid in one lump sum.
2. Subject to counsel fees hereinafter approved, defendant shall pay plaintiff permanent partial disability benefits at the rate of $366.55 per week for thirty (30) weeks for plaintiff's ten percent (10%) permanent partial impairment disability to his back. This sum shall be paid in one lump sum.
3. Defendant shall pay for all reasonably necessary medical expenses which effect a cure, give relief and/or lessen plaintiff's period of disability resulting from plaintiff's compensable injury when bills for the same have been submitted to and approved in accordance with Industrial Commission procedure, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded plaintiff is approved and allowed for plaintiff's counsel, and shall be deducted from the compensation awarded to plaintiff. The attorney's fees shall be paid directly to plaintiff's attorney.
5. Defendant shall pay the costs of this action.
This the ___ day of November 1999.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/bjp